UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAI MAI, | Case No.: 3:26-cv-01196-RBM-BLM |
| Petitioner, | |
| v. | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| KRISTI NOEM, Secretary of the Department of Homeland Security, et al., | |
| Respondents. | **[Docs. 1, 2]** |

Pending before the Court are Petitioner Cai Mai's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1) and Motion for a Temporary Restraining Order ("TRO Motion") (Doc. 2).  For the reasons set forth below, the Petition is **GRANTED** and the TRO Motion is **DENIED AS MOOT**.

## I.     BACKGROUND

**A.     Factual Background**

Petitioner is a native and citizen of Vietnam who entered the United States as a refugee on or about September 25, 1980.  (Doc. 7-1, Declaration of Deportation Officer Concepcion Arredondo ("Arredondo Decl.") ¶¶ 4, 6.)  On April 1, 1982, Petitioner became a lawful permanent resident.  (*Id.* ¶ 6.)  On July 23, 1991, the "Immigration and Nationalization Service placed Petitioner into deportation proceedings," charging him with being a noncitizen who "had been convicted of two or more crimes involving moral turpitude."  (*Id.* ¶ 7.)  On February 8, 1993, after Petitioner failed to appear for deportation

proceedings, an immigration judge ordered that Petitioner be deported to Vietnam in absentia. (*Id.* ¶ 8.) On April 8, 2015, "a motion to reopen and rescind the in absentia deportation order was filed" with the immigration judge. (*Id.* ¶ 9.) The immigration judge granted that motion. (*Id.*)

On June 6, 2015, the Department of Homeland Security ("DHS") filed additional charges of inadmissibility/deportability with the immigration judge. (*Id.* ¶ 10.) "The [Form] I-261 charged that Petitioner was deportable from the United States pursuant to [Immigration and Nationality Act] § 237(a)(2)(A)(iii) in that he [is a noncitizen] who has been convicted of an aggravated felony at any time after admission." (*Id.*) On July 20, 2015, the immigration judge ordered that Petitioner be deported to Vietnam. (*Id.* ¶ 11.) That removal order became administratively final after both parties waived appeal. (*Id.*)

On August 6, 2015, Petitioner was issued a Warrant of Removal/Deportation. (*Id.* ¶ 12.) On October 9, 2015, Immigration and Customs Enforcement ("ICE") released Petitioner from immigration detention on an order of supervision that required Petitioner to "obey all federal, state, and local laws or ordinances, commit no crimes while on the order of supervision, and immediately notify ICE of any new arrests or convictions." (*Id.* ¶ 13.) Petitioner was thereafter committed to state prison following his conviction for first-degree residential burglary. (*Id.* ¶ 14.) The offense occurred on July 26, 2021, while Petitioner was still subject to the 2015 order of supervision. (*Id.*) On November 6, 2023, after Petitioner's release from state prison, ICE placed him on a new order of supervision that again required Petitioner not to commit any crimes while on supervision. (*Id.* ¶ 15.) On March 10, 2025, Petitioner was convicted of second-degree burglary. (*Id.* ¶ 16.) The offense occurred on April 30, 2024, while Petitioner was still subject to the 2023 order of supervision. (*Id.*)

On August 11, 2025, ICE lodged an immigration detainer with the California Department of Corrections and Rehabilitation. (*Id.* ¶ 17.) On August 21, 2025, Petitioner was released from state prison and transferred to ICE custody. (*Id.* ¶ 18.) On February 2, 2026, Vietnam issued "a limited-term travel document for Petitioner that will expire on

August 8, 2026." (*Id.* ¶ 23.) ICE Enforcement and Removal Operations currently has physical possession over the travel document and has scheduled Petitioner for a removal flight to Vietnam during the week of March 15, 2026. (*Id.*)

**B.    Procedural Background**

On February 24, 2026, Petitioner filed the Petition (Doc. 1) and TRO Motion (Doc. 2). The next day, the Court ordered Respondents to show cause why the Petition and TRO Motion should not be granted by filing a written response. (Doc. 3.) On March 4, 2026, the Court granted the Parties' joint motion to extend the briefing schedule. (Doc. 6.) On March 5, 2026, Respondents filed their Response in Opposition to Petitioner's Habeas Petition. (Doc. 7.) The next day, Petitioner filed his Traverse in Support of Petition for a Writ of Habeas Corpus. (Doc. 8.)

## II.    <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    <u>DISCUSSION</u>

Petitioner argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. §§ 241.4(l) and 241.13(i); (2) the Fifth Amendment's Due Process Clause; (3) the Administrative Procedure Act; and (4) the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 2, 8–15.) Petitioner also claims ICE may not remove him to a third country "without adequate notice and an opportunity to be heard." (*Id.* at 2, 15–18.)

3:26-cv-01196-RBM-BLM

Respondents argue that (1) the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g); (2) there is a significant likelihood of removal in the reasonably foreseeable future because ICE has secured Petitioner's travel document and scheduled a removal flight; (3) an alleged regulatory violation does not warrant habeas relief because Petitioner cannot show prejudice; and (4) "third country removal is not at issue in this case and Petitioner's concerns in that regard are purely speculative." (Doc. 7 at 4–10.)

**A.    Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, *Lance v. Coffman*, 549 U.S. 437, 439 (2007), it will first address Respondents' jurisdictional argument. For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.

Respondents argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 7 at 5–6.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner challenges violations of ICE's duties under statutes, regulations, and the Constitution rather than his underlying order of removal. He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original); *see also United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Accordingly, as courts

4

in this District have routinely found, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Phan v. Noem*, Case No.: 2:25-cv-02422-RBM-MSB, 2025 WL 2898977, at *2–3 (S.D. Cal. Oct. 10, 2025).

## B.    Due Process

Petitioner challenges his detention as unlawful based on ICE's alleged noncompliance with several provisions of 8 C.F.R. §§ 241.4 and 241.13. (Doc. 1 at 10–11; Doc. 8 at 2–4.) Petitioner's claims therefore implicate the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under § 1231, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations are 8 C.F.R. §§ 241.4 and 241.13.

### 1.    Agency Regulations

In relevant part, release may be revoked when the Executive Associate Commissioner or a district director believes revocation "is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). Section 241.13 provides "special review procedures" that apply where a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably

foreseeable future." § 241.13(a). Release may be revoked under this section if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Under both regulations, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

The Court finds that Petitioner's detention was procedurally deficient because he was not provided a prompt interview to respond to the reasons for revocation of his release.[1] Petitioner was taken into ICE custody on August 21, 2025. (Arredondo Decl. ¶ 18.) Petitioner has not received an informal interview in the six months since then, despite the requirement that he be afforded one "promptly after his or her return to Service custody." (Doc. 1-2, Declaration of Cai Mai ¶¶ 5–6; *see* Doc. 7 at 8.) *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding "the failure to provide an informal interview during that lengthy [two-month] period of time renders petitioner's re-detention unlawful"). Thus, ICE violated its own regulations by failing to provide a prompt interview.

### 2.    Prejudice

Respondents argue that even if ICE violated agency regulations, Petitioner cannot show prejudice because "any challenge Petitioner would have made during an informal interview after his re-detention would have failed." (Doc. 7 at 8.) The Court disagrees.

"[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [ ] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation . . .

---

[1] In light of this finding, the Court does not address the other alleged violations of §§ 241.4 and 241.13.

6

implicates due process concerns even without a prejudice inquiry." *Id.* (holding that where "the regulation violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025). Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205.

But even if that were not the case, Petitioner suffered sufficient prejudice. In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of §§ 241.4 and 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id.* Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). As discussed above, ICE deprived Petitioner of these due process protections. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known

maxim that agencies must comply with their own regulations."). Most district courts have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*, 804 F. Supp. 3d 1095, 1099–1100 (S.D. Cal. 2025); *see K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"). This Court reaches the same conclusion: because ICE violated its own regulations when it revoked Petitioner's release, the Petition is **GRANTED**.

In light of the disposition herein, and the representation that ICE does not seek to remove Petitioner to a third country, the Court declines to address the remaining grounds in the Petition.

### IV.   CONCLUSION

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.[2]

2. Petitioner's TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: March 9, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] Respondents also "ask that ICE be permitted to place Petitioner on GPS monitoring to minimize the risk of absconding." (Doc. 7 at 10 n.4.) "The habeas statute does not empower courts to manage ICE supervision programs." *Ba v. Lyons*, Case No.: 3:25-cv-2871-CAB-BJW, 2026 WL 218936, at *1 (S.D. Cal. Jan. 27, 2026) (citing 28 U.S.C. § 2241(c)(3)). If ICE wishes to place Petitioner on GPS monitoring, it may seek to do so by following whatever legal process is necessary. That process does not involve this Court.

3:26-cv-01196-RBM-BLM